UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NEW YORK LIFE INSURANCE COMPANY, § § Plaintiff/Counter-Defendant, § VS. § § SRINIVAS VARATI, § § Defendant/Counter-Plaintiff § | CIVIL ACTION NO. 4:21-CV-0315 |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the counter-defendant's, New York Life Insurance Company (the Company), combined motion to dismiss defendant's counterclaim pursuant to Rule 12(b)(6) and motion for judgment on the pleadings (DE 8). The counter-plaintiff, Srinivas Varati (Varati), has filed a response opposing the motion (DE 9), and the Company has filed a reply in support (DE 13). After having carefully considered the parties' submissions and the applicable authorities, the Court determines that the Company's combined motion to dismiss and for judgment on the pleadings should be GRANTED.

**II.   FACTUAL AND PROCEDURAL BACKGROUND**

The Court considers the following factual allegations as true for purposes of the present motion. Varati is the administrator for the estate of Shanti Nakirekanti. Shanti died on February 18, 2019, the same day as her late spouse, Sreenivas Nakirekanti (Sreenivas). Sreenivas died by suicide.[1] On March 30, 2017, the Company issued term life insurance policy 24 981 442 (the Policy) to Sreenivas. The Policy, effective February 19, 2017, had a face value of $500,000 and listed Sreenivas as the sole "owner." The Policy, and Sreenivas's application for the Policy,

---
[1] The precise circumstances of Shanti's death are not relevant to the disposition of this motion.

listed Sreenivas's children, Pranay and Nitya, each as a 50% beneficiary. Section 3.4 of the Policy's base provisions (the Base Policy) defines "Beneficiary" as "the person or entity named in the application, or in a notice you sign that gives us [the Company] the information we need[.]"

The Company issued the Base Policy with an attached endorsement called the Spouse's Paid-up Insurance Purchase Option (the Option). Section 1 provides that when the insured that is covered under the Base Policy dies, the eligible applicant shown in Section 2 can purchase a new single premium paid-up whole life insurance policy that insures the insured's spouse. Section 2 states who is eligible to purchase the New Policy. Eligible applicants include the insured's spouse who is a beneficiary, the owner who is a beneficiary but not the insured's spouse, and the owner who is a trust and beneficiary. Additionally, Section 9 addresses "simultaneous death." In the event the insured and the insured's spouse die "simultaneously" (within 30 days of the insured's death) the insured's spouse is still eligible, so long as a third party or trust is not the owner and beneficiary. However, in the event the insured commits suicide, Section 9 is inapplicable.

After Sreenivas's death, the named beneficiaries, Pranay and Nitya, the children of the insured, who is the owner of the Policy, submitted a claim for Policy benefits to the Company. The Company paid 50% of the Policy proceeds to Pranay and Nitya, respectively, on May 28, 2019 and June 5, 2019. The children then caused an estate to be opened on the mother (the Estate). Varati, the Estate's administrator, commenced this suit in the name of the Estate.

The Estate alleges that, after Shanti's death, the Company's agent told Shanti's family that Shanti was eligible for the Simultaneous Death benefit in the amount of $500,000. The Estate further alleges that the agent collected a $1,690.42 premium check for the Simultaneous

Death benefit and submitted the claim with the premium to the Company, which deposited the premium check. (Although unclear from the pleadings, the Court will presume that the premium was paid with Estate funds).

On December 15, 2020, the Estate made a written demand on the Company for payment of the Simultaneous Death benefit in the amount of $500,000. On February 1, 2021, the Company filed suit in this Court, seeking a declaratory judgment that it has no obligation under the Policy to pay the benefit to the Estate. The Estate timely filed an answer, as well as counterclaims: for "all sums due under the Simultaneous Death Clause of the policy"; for economic damages, penalties, and attorney's fees arising out of alleged violations of the Prompt Payment provisions of Chapter 542 of the Texas Insurance Code; and for economic and mental anguish damages arising out of the Company's alleged "unconscionable action or course of action," in violation of Section 17.50 of the Texas Deceptive Trade Practices Act (DTPA). The Company now moves to dismiss the Estate's counterclaims pursuant to Rule 12(b)(6) and for judgment on the pleadings.

### III. THE PARTIES' CONTENTIONS

The Company seeks dismissal of the Estate's claim for the Simultaneous Death benefit, arguing that the Policy unambiguously makes Shanti and, therefore, the Estate, ineligible for benefit. The Company also asserts that because the Estate is not entitled to the benefit, its Prompt Payment Act claim necessarily fails. Finally, the Company argues that the Estate's DTPA claim fails because the Estate: (1) is not a "consumer" under the DTPA; (2) does not allege that the Company acted "unconscionably" at the time of sale; and (3) does not sufficiently plead unconscionability.

The Estate responds that because the Policy is ambiguous as to whether Shanti had to be a named Policy beneficiary to be entitled to the benefit, the Court should adopt the interpretation favoring Shanti and the Estate. The Estate further contends that the "suicide exclusion" in Section 9 does not unambiguously negate coverage and that, in any event, the Company agreed in the Option's Section 12 to not contest the benefit. Additionally, the Estate argues that the Company waived its right to deny coverage when it paid the Base Policy's death benefit to Pranay and Nitya. As to the DTPA claim, the Estate asserts that a party need not be a "consumer" to bring a DTPA claim. Alternatively, Shanti was a consumer because the Policy was purchased during the marriage with community funds, making her a co-owner.

The Company responds that, notwithstanding the Estate's assertion that "consumer" status is not required to sue for a violation under Tex. Bus. & Com. Code § 17.46(b), the Estate in fact pleaded only a claim for unconscionable conduct under Section 17.50, based on the Company's alleged post-claim acts. Finally, the Company argues that the Estate does not allege that it acted in reliance on the alleged representations of the Company's agent.

## IV.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed.2d 929 (2007). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)).

In *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969 n.8

(citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In this regard, its review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## V.   ANALYSIS AND DISCUSSION

### a.   The Defendant's Claim for Policy Benefits

The Court first addresses the Estate's claim for the Simultaneous Death benefit. The parties agree that the Court should interpret the Policy in accordance with Texas law. Insurance policies are contracts, and "the rights and obligations arising from them and the rules used to construe them are those generally pertaining to contracts." *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 777 (Tex. 2008). "When interpreting a contract, [a court's] primary concern is to ascertain and give effect to the intent of the parties as expressed in the contract." *In re Serv. Corp. Int'l*, 355 S.W.3d 655, 661 (Tex. 2011). Absent ambiguity, contracts are construed as a matter of law. *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1, 7 (Tex. 2014). However, a contract is ambiguous only if it is "subject to two or more reasonable interpretations after applying the pertinent construction principles[.]" *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012).

Applying these principles, the Court is of the opinion that Shanti was not eligible for the Simultaneous Death benefit because she was not a named beneficiary under the Base Policy. Under Section 2, an applicant's eligibility to purchase a New Policy turns on whether she is a beneficiary for all or part of the Base Policy life insurance proceeds. The Court interprets subsection 2(a.)'s clause "who is a Beneficiary for all or part of the Base Policy Life Insurance

Proceeds" to mean that, in order to purchase a New Policy, the Insured's Spouse must be a beneficiary under the Base Policy. Section 3.4 of the Base Policy defines "Beneficiary" as "the person or entity named in the application, or in a notice you sign that gives us [the Company] the information we need[.]"

Moreover, the Estate's argument that Shanti was eligible to purchase a New Policy despite not being a named beneficiary conflicts with Section 3.4 and subsections 2(b.) and 2(c.). In both subsections, eligibility turns on whether the person or trust seeking the benefit is a beneficiary. The Estate's interpretation renders these subsections meaningless. The Court reaches this conclusion because the Court presumes that the parties intended to give meaning and effect to the entire writing, and the Court must harmonize all the provisions of the contract so that none will be rendered meaningless. *See Apache Deepwater, LLC v. McDaniel Partners, Ltd.*, 485 S.W.3d 900, 907 (Tex. 2016). Having done so, the Court determines that the Estate's proposed interpretation of Section 2 is unreasonable and, therefore, that the provision is not ambiguous.

Nor is Section 9, the Simultaneous Death provision, ambiguous. Section 9 states that the insured's spouse is eligible for the Option benefit "[i]f the Insured's Spouse, who has the right to purchase a New Policy, dies at the same time as the Insured or within 30 days after the Insured's death[.]" Because, as a matter of law, Shanti was not a Beneficiary of the Base Policy, she was not eligible for the Simultaneous Death benefit. Nor does the Option's incontestability provision (Section 12) bar the Company from contesting Shanti's eligibility. Such provisions "protect the insured from a contest as to the *validity* of the policy" and "should not be applied to change the meaning of the terms of the policy or to enlarge its coverage." *Minnesota Mut. Life Ins. Co. v. Morse*, 487 S.W.2d 317, 319 (Tex. 1972) (emphasis added). Therefore, the Estate's claim for benefits under the Policy is dismissed with prejudice.

### b. The Defendant's Statutory Claims

The Estate also seeks damages, interest, and attorney's fees for the Company's alleged noncompliance with the Texas Prompt Payment Act. *See* Tex. Ins. Code § 542.060 (setting forth remedies for Prompt Payment Act violations). To recover Prompt Payment Act damages under section 542.060, an insured must establish the insurer's liability under the relevant insurance policy. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814 (Tex. 2019). Because, as a matter law, the Estate is not entitled to the Policy benefit, the Estate's Prompt Payment Act claim is dismissed with prejudice.

Similarly, the Estate's claim of "unconscionable" conduct under the DTPA fails. The agent's conduct following Shanti's death is inconsequential. Specifically, the Estate alleges that, after representing to Shanti's family that "the [Option] covered the death of Shanti," the Company collected and deposited a $1,690.42 premium check from Shanti's estate. The Company then denied the Estate's claim, and the Company's agent made insulting statements to Shanti's family. The Estate's reliance on post-claim conduct does not and cannot create a cause of action that does not exist. The insured's spouse was not a beneficiary of the policy proceeds. Moreover, even the owner, as agreed by the Estate, was not a beneficiary. Therefore, the supplemental benefit was never available to Shanti or the Estate. The fact that the agent was mistaken does not alter the terms of the Policy. The Estate's DTPA claim fails.

### c. The Company's Request for Declaratory Judgment

The Company seeks a declaratory judgment stating that it has and had no obligation or liability to the Estate under the Option endorsement. The Company filed its declaratory judgment action under both the state and federal statutes. In deciding whether to exercise jurisdiction over

the Company's federal Declaratory Judgments Act claim,[2] the Court must determine: (1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action (the "*Trejo*" factors). *Sherwin–Williams Co. v. Holmes Cty.*, 343 F.3d 383, 387 (5th Cir. 2003).

As to justiciability, the Company filed suit against the Estate only after the Estate made a written demand on the Company for payment of the Simultaneous Death benefit and threatened legal action if the Company did not pay. Therefore, a justiciable controversy exists here. The Court also has authority to grant declaratory relief, since none of the three factors that would require mandatory abstention are present here. *Sealed v. Sealed*, No. 94-30148, 1994 WL 487245, at *2 (5th Cir. Aug. 18, 1994) (unpublished) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)).

The Court now turns to the "*Trejo*" factors, which guide its discretion over whether to exercise jurisdiction over the Company's declaratory judgment claim. The *Trejo* factors are:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin–Williams*, 343 F.3d at 388. Because here there is no pending state court action or decree, the first, fourth, and seventh factors weigh in favor of exercising jurisdiction. *AXA Re*

---

[2] However, the Texas Declaratory Judgments Act does not apply to actions in federal court. *Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 (5th Cir. 2014) (per curiam) (citing *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998)).

*Prop. & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 321 (5th Cir. 2006). The second factor weighs against exercising jurisdiction, since the Company appears to have sued in federal court in anticipation of state court litigation by the Estate. The third factor, however, supports exercising jurisdiction. *See AXA*, 162 F. App'x at 321 ("AXA has not engaged in improper forum shopping merely by filing a declaratory action in federal court availing itself of diversity jurisdiction."). The fifth factor also supports exercising jurisdiction, since Varati, the central witness who allegedly communicated with the Company regarding the Option benefit, resides in the Southern District of Texas. Finally, the sixth factor supports exercising jurisdiction. At present, there is no pending state court litigation, and the Court has already adjudicated the Estate's related claim for policy benefits.

Based on the foregoing, the Court concludes, in the exercise of its discretion, that it is appropriate to decide this declaratory judgment action. Therefore, the Company's request that the Court declare the rights of the parties should be granted. The Court declares that Shanti was not eligible for any benefit under the Option endorsement to the Policy and that the Company has no obligation under the Policy to pay any such benefit to the Estate.

## VI. CONCLUSION

Based on the foregoing analysis and discussion, the counter-defendant's, New York Life Insurance Company, combined motion to dismiss the defendant's counterclaim pursuant to Rule 12(b)(6), and for judgment on the pleadings, should be, and is hereby, GRANTED.

It is so ORDERED.

SIGNED on this 19th day of July, 2021.

_____
Kenneth M. Hoyt
United States District Judge